885 A.2d 1

IN THE MATTER OF THE DIVISION OF ASSETS AND LIABILI-
TIES AMONG THE CONSTITUENT DISTRICTS OF LOWER CAM-
DEN COUNTY REGIONAL HIGH SCHOOL DISTRICT NO. 1.

Superior Court of New Jersey
Appellate Division

Argued September 27, 2005—Decided October 26, 2005.

Before Judges SKILLMAN, AXELRAD and FRANCIS.

*Frederick A. Jacob,* argued the cause for appellant/cross-respondent Lindenwold Board of Education *(Jacob & Chiarello,* attorneys; *Mr. Jacob and Deana L. Walsh,* on the brief).

*Richard K. Tavani,* argued the cause for appellant/cross-respondent Winslow Township *(Weber, Gallagher, Simpson, Stapleton, Fires & Newby,* attorneys; *Mr. Tavani,* of counsel and on the brief).

*David M. Serlin,* argued the cause for appellant/cross-respondent Winslow Township Board of Education.

*John R. Armstrong,* argued the cause for respondents/cross-appellants Waterford Township and Waterford Township Board of Education *(Cooper, Levenson, April, Niedelman & Wagenheim,* attorneys; *Michael Gross,* on the brief).

*Robert A. Muccilli,* argued the cause for respondents Berlin Township Board of Education and the Clementon Borough Board of Education *(Capehart & Scatchard,* attorneys; *Mr. Muccilli,* on the brief).

*Peter C. Harvey,* Attorney General, attorney for respondent State Board of Education *(Allison Colsey Eck,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by these appeals is whether the Commissioner of Education and State Board of Education reasonably determined, under the authority of *In re Distribution of Liquid Assets Upon Dissolution of the Union County Regional High School District No. 1, Union County,* 168 *N.J.* 1, 773 *A.*2d 6 (2001) (hereafter referred to as *Union County*), that the "liquid assets" of the now-dissolved Lower Camden County Regional High School District No. 1 should be distributed solely to the constituent

districts of the former regional district that did not receive any distribution of buildings and real estate.

In 1998, a majority of voters of the constituent districts approved a referendum dissolving the regional school district. The referendum question submitted to the voters did not include any provision regarding distribution of the liquid assets of the regional district after dissolution.

After approval of this referendum, the Commissioner of Education set June 30, 2001 as the effective date for dissolution of the regional district. Pursuant to *N.J.S.A.* 18A:13–62, it became the responsibility of the Camden County Superintendent of Schools to issue a report setting forth how the assets of the district would be distributed.

While the matter was under consideration by the County Superintendent, he held discussions with the superintendents and business administrators of the constituent districts. The purpose of those discussions, as described in the County Superintendent's report, was "to establish common understandings so that efforts would proceed towards dissolution." However, the County Superintendent "made it abundantly clear ... throughout this process" that although "consensus or input was desirable ... the final decision on the distribution of assets was [the County Superintendent's] in accordance with [the] statute."

Before the County Superintendent issued his report, respondent Township of Waterford sent him a letter which asserted that, under the Supreme Court's recent decision in *Union County*, "an equitable division of 'liquid assets' will require a distribution of such 'liquid assets' only among those former constituents of the Regional District which will not have conveyed to them school buildings in accordance with *N.J.S.A.* 18A:13–61."

Nevertheless, the County Superintendent concluded that the regional district's liquid assets should be distributed among all the constituent districts, including the three to which all the regional district's buildings and real estate were distributed—Lindenwold,

Pine Hill and Winslow—referred to hereinafter as the "building districts." The County Superintendent determined that those assets had an adjusted cash value of approximately $8.4 million. In accordance with his discussions with the administrators for the constituent districts, he also determined that those assets would remain in the possession of the building districts and that the non-building districts would receive cash payments for the percentage of liquid assets to which they were entitled under the formula set forth in *N.J.S.A.* 18A:8–24.

The Township of Waterford filed a petition of appeal to the Commissioner of Education challenging the County Superintendent's determination, contending that all the regional district's liquid assets should be distributed to the non-building districts. The Commissioner referred the dispute to the Office of Administrative Law. At a pretrial conference before the Administrative Law Judge (ALJ) to whom the case was assigned, the parties agreed to submit the matter for decision in a "summary fashion," without an evidentiary hearing. As the case was presented to the ALJ, the sole issue was the applicability of the Court's decision in *Union County* under the circumstances of this case. None of the parties disputed the values the County Superintendent had assigned to the liquid assets or the proposed method of distribution to the non-building districts of their respective shares of those values.

The ALJ concluded that the distribution of the regional district's liquid assets in strict accordance with the formula set forth in *N.J.S.A.* 18A:8–24 would be unfair and inequitable. In reaching this conclusion, the ALJ compared the distributions that would be received under that formula by Waterford, one of the non-building districts, and by Pine Hill, one of the building districts:

> For instance, Waterford contributed 16.34% towards the cost of the Regional District's total assets, based upon its percentage of tax contributions, and it is receiving 1.95% back upon dissolution. Waterford is incurring a $10.1 million loss. The same is true for the remaining non-building districts.... Conversely, the building districts are reaping significant gains in percentage terms and in real dollars. For example, Pine Hill contributed 8.34% towards the cost of the Regional

District's total assets, based upon its percentage of tax contributions, and it is receiving 29.13% back upon dissolution. Pine Hill will reap a $14.7 million gain.

Based on this analysis, the ALJ concluded that the circumstances in this case were "almost identical" to those in *Union County*.

The ALJ also rejected an argument presented by some constituent districts that an "informal, unexecuted" agreement among the districts precluded any deviation from the distribution formula set forth in *N.J.S.A.* 18A:8–24:

> There are ... glaring facts that refute the assertion that an agreement existed among the districts concerning the distribution of the liquid assets. First, the agreement is not signed by all of the districts. This is undisputed and does not weigh heavily in support of the assertion that there was a meeting of the minds. Moreover, no other writing(s) were offered that reflect a meeting of the minds regarding this material provision. Finally, the superintendent incorporated the unexecuted agreement as part of his June 30, 2001, Report. Paragraph 12 of the document, entitled "Binding Agreement," states, "This Agreement shall benefit and be binding upon the Districts and their respective successors and permitted assigns. However, the parties recognize that there currently exists litigation brought by the Township of Waterford to obtain a share of the Building Assets and the parties agree notwithstanding the foregoing sentence to be bound by a final decision rendered in the litigation." The superintendent's June 30, 2001, Report and the draft agreement annexed thereto ... show that a controversy existed over the distribution of the assets before June 30, 2001. In fact, [Waterford] forwarded a letter to the superintendent on June 7, 2001, requesting that the final distribution of the liquid assets be made only to the non-building districts. Further, the referendum question posed to the voters did not contain any specific language that could be construed as a binding commitment to distribute the liquid assets one way or another.
>
> The lack of a signed agreement, the confirmation of an existing dispute as of June 7, 2001, the confirmation of a dispute in the draft agreement appended to the superintendent's Report, and the lack of any other evidence leave no doubt that an enforceable oral agreement did not exist.

Although the ALJ concluded that strict application of *N.J.S.A.* 18A:8–24 was unfair and inequitable, he also concluded that only Waterford was entitled to relief from the distribution formula set forth therein because the other non-building districts had entered into sending-receiving relationships with one or another of the building districts, under which the pupils residing in their districts would attend school in a building district.

The Commissioner adopted the ALJ's recommended decision that the inequity of strict application of *N.J.S.A.* 18A:8–24 re-

quired a deviation from the liquid asset distribution formula set forth therein and, as in *Union County,* those assets should be distributed solely to the non-building districts. However, he disagreed with the ALJ's conclusion that a sending-receiving relationship between a non-building district and a building district constitutes a "quantifiable asset" that justifies the exclusion of a non-building district from the benefit of a redistribution of liquid assets under the principles set forth in *Union County.* Therefore, the Commissioner concluded that "the most equitable allocation of the former Regional District's assets under these circumstances, would be to divide the total liquid assets among the four non-building districts in proportion to the percentages of school taxes that each of those non-building districts paid to the former regional district, without regard to the contributions of the building districts." The Commissioner also concluded, as the ALJ had recommended, that the building districts should be allowed a five-year period within which to make installment payments for the $8,469,326 owed to the non-building districts for the liquid assets. In addition, the Commissioner declined to require the building districts to pay any interest to compensate for the delay in the payments for the liquid assets resulting from the installment method of payment.

The Lindenwold Board of Education, Winslow Township and the Winslow Board of Education appealed the Commissioner's decision to the State Board of Education. Lindenwold subsequently filed a motion with the State Board to afford it an opportunity to present testimony "on the issues of whether the constituent districts had agreed to a division of the non-liquid assets before the County Superintendent's report was issued, whether a sending-receiving relationship constituted a quantifiable asset, and to afford the County Superintendent the opportunity to defend his report." The State Board denied this motion and subsequently affirmed the Commissioner's decision.

The Lindenwold Board of Education, Winslow Township Board of Education and Winslow Township filed separate notices of

appeal from the State Board's final decision. Waterford Township and the Waterford Township Board of Education filed notices of cross-appeal from the part of the State Board's final decision that denied any award of interest on the installment payments for the liquid assets. We now consolidate the three appeals and affirm the State Board's decision in all respects.

*N.J.S.A.* 18A:13–61 provides that, upon dissolution of a regional school district, all school buildings and grounds, and the furnishings and equipment located therein, shall be distributed to the constituent districts in which they are located, and that the county superintendent shall allocate the regional district's debt among the constituent districts, giving "due regard" to the value of those buildings and grounds.

*N.J.S.A.* 18A:13–62 provides that a dissolved regional district's other assets, commonly referred to as "liquid assets," shall be divided among the constituent municipalities in "the same manner as provided in [*N.J.S.A.*] 18A:8–24." *N.J.S.A.* 18A:8–24 provides in pertinent part:

> The county superintendent ... shall make a division of the assets, except school buildings, grounds, furnishings and equipment, and of the liabilities, other than the bonded indebtedness ... on the basis of the amount of the ratables in the respective districts on which the last school tax was levied, and in determining the amount of assets to be divided, he shall take into account the present value of the school books, supplies, fuel, motor vehicles and all personal property other than furnishings and equipment.

In *Union County,* the Court held that a deviation from the formula for the distribution of liquid assets set forth in *N.J.S.A.* 18A:8–24 is appropriate in certain circumstances. 168 *N.J.* at 15–18, 773 *A.*2d 6. In reaching this conclusion, the Court stated that "[t]he legislative history and the statutory scheme for dissolution of regional districts illustrate clearly that the overriding goal of the statutory scheme is to distribute equitably the regional district's assets and liabilities." *Id.* at 15, 773 *A.*2d 6. The Court noted that "[t]he principal tool for equalizing the overall dissolution package [among the constituent municipalities] is the shifting of debt." *Id.* at 16, 773 *A.*2d 6. However, "[w]hen the debt load is small and the real property is valuable, equalization among con-

stituent municipalities cannot be achieved simply by shifting debt."
*Id.* at 17, 773 *A.*2d 6. Therefore, the Court held:

> Given the obvious purpose of the statutory scheme to distribute assets and
> liabilities equitably, and the generalized assumption in the statute that debt
> allocation is a sufficient mechanism for ensuring equity, we are persuaded that in
> these circumstances insistence on strict application of the asset distribution scheme
> in *N.J.S.A.* 18A:8–24 is unwarranted, particularly where, as here, the parties
> entering into dissolution have agreed to an alternative liquid asset distribution
> formula that represents a more equitable asset allocation. To hold otherwise
> would be to ignore the clear overriding purpose of the statutory framework in favor
> of ritualistic application of statutory language divorced from context.
>
> [*Ibid.*]

Applying this holding to the two non-building constituent dis-
tricts in the Union County regional district, Mountainside and
Garwood, the Court concluded that strict application of *N.J.S.A.*
18A:8–24 would be inequitable, and therefore all the regional
district's liquid assets should be distributed to those districts to
ameliorate that inequity:

> [S]trict application of *N.J.S.A.* 18A:8–24 would leave Mountainside and Garwood
> with a substantial shortfall, and the remaining municipalities with a windfall, of the
> District's assets based on the proportions of the District's operating budget that
> each municipality contributed. Because of the composition of the District's assets,
> weighted heavily with real property and burdened by little debt, inequity is
> perhaps inevitable under any alternative. But allocating liquid assets exclusively to
> Mountainside and Garwood certainly helps ameliorate that disproportion. . . .
>
> [*Id.* at 18–19, 773 *A.*2d 6.]

The Court also indicated that it was "mindful of Mountainside's
argument that, when it agreed to join the dissolution petition, it
did so in reliance on the expectation that it and Garwood would
receive the entirety of the District's liquid assets." *Id.* at 19, 773
*A.*2d 6. The Court stated:

> [W]e find troubling the notion that parties to a dissolution can agree to a specific
> method of asset distribution, and thereafter reverse course and support a distribu-
> tion method that substantially disfavors one of the petitioning parties. That the
> five municipalities had agreed to distribute the liquid assets exclusively to Moun-
> tainside and Garwood strongly supports Mountainside's argument that the State
> Board erred in not deviating from the statutory framework and implementing that
> agreement.
>
> [*Ibid.*]

■ Appellants argue that *Union County* does not apply to this case because the constituent municipalities of the former Lower Camden County Regional High School District did not agree to distribute the district's liquid assets in a manner different from the formula set forth in *N.J.S.A.* 18A:8–24. However, we do not read *Union County* to hold that the Commissioner and State Board may deviate from strict application of the statutory distribution formula only if the constituent municipalities all agree upon such a deviation. Rather, the holding of *Union County* is that if the debt of a dissolved regional district is so small that allocation of debt cannot achieve an equitable allocation of the district's assets and liabilities, the Commissioner and State Board have authority to deviate from the statutory distribution formula. The Court in *Union County* referred to the constituent municipalities' agreement to deviate from the statutory formula as simply reinforcing its conclusion that the State Board's refusal to deviate from that formula was unreasonable. *See id.* at 18–19, 773 *A.*2d 6. Therefore, we conclude that the existence of such an agreement is not a prerequisite to the Commissioner and State Board exercising their authority to deviate from the formula set forth in *N.J.S.A.* 18A:8–24.

Appellants also argue that the liquid asset distribution formula set forth in *N.J.S.A.* 18A:8–24 does not result in the same inequity in this case as in *Union County*. However, the ALJ's decision convincingly demonstrates that the inequities produced by strict application of the statutory formula to the distribution of the liquid assets of the Lower Camden regional district would be comparable to those in *Union County*. Table I in the ALJ's decision demonstrates the extent of this inequity by comparing the percentage of total assets of the former regional district that each constituent municipality would receive under a strict application of *N.J.S.A.* 18A:8–24 with the percentage of taxes paid by each constituent municipality for operation of the district:

| District | Real Estate Received | Liquid Assets Received | Total Assets Received | % Reg. District Assets Rec'd. | %Tax Contributed | Pro Rata Value of Total Assets, by % Tax Contrib. | Gain / Loss |
|---|---|---|---|---|---|---|---|
| Berlin Twp. | $0 | $821,703 | $821,703 | 1.16 | 9 7021026 | $6,871,421 | ($6,049,719) |
| Chesilhurst | $0 | $124,939 | $124,939 | 0.18 | 1 4751950 | $1,044,793 | ($919,854) |
| Clementon | $0 | $464,864 | $464,864 | 0 66 | 5 4888015 | $3,887,391 | ($3,422,527) |
| Lindenwold | $13,153,941 | $1,264,067 | $14,418,008 | 20 36 | 14 9252315 | $10,570,653 | $3,847,355 |
| Pine Hill | $19,923,563 | $706,840 | $20,630,403 | 29 13 | 8 3458839 | $5,910,892 | $14,719,511 |
| Waterford Twp. | $0 | $1,384,028 | $1,384,028 | 1 95 | 16.3416574 | $11,573,823 | ($10,189,794) |
| Winslow Twp. | $29,277,214 | $3,702,885 | $32,980,099 | 46.57 | 43.7211281 | $30,965,071 | $2,015,028 |
| Total | $62,354,718 | $8,469,326 | $70,824,044 | 100.00 | 100 00 | $70,824,044 | |

Table II in the ALJ's decision, which compares the percentage of assets each constituent district will receive if the liquid assets are distributed solely to the non-building districts with the percentage each district would receive under a strict application of *N.J.S.A.* 18A:8–24, shows that the remedy ordered by the State Board only partially ameliorates the inequity:

| District | Real Estate | Liquid Assets After Redistribution | Total Assets | % Total Assets Received after Redistribution | % Tax Paid to Regional District | % Total Assets Received Before Redistribution |
|---|---|---|---|---|---|---|
| Berlin Twp. | $0 | $2,489,423 | $2,489,423 | 3 51 | 9.7021026 | 1.16 |
| Chesilhurst | $0 | $378,514 | $378,514 | 0.53 | 1.4751950 | 0.18 |
| Clementon | $0 | $1,408,349 | $1,408,349 | 1.99 | 5 4888015 | 0 66 |
| Lindenwold | $13,153,941 | $0 | $13,153,941 | 18.57 | 14.9252315 | 20.36 |
| Pine Hill | $19,923,563 | $0. | $19,923,563 | 28.13 | 8 3458839 | 29.13 |
| Waterford Twp. | $0 | $4,193,039 | $4,193,039 | 5.92 | 16.3416574 | 1.95 |
| Winslow Twp. | $29,277,214 | $0 | $29,277,214 | 41.34 | 43.7211281 | 46.57 |
| Total | $62,354,718 | $8,469 326 | $70,824,044 | 100.00 | 100.00 | 100.01 |

Therefore, as in *Union County*, strict application of *N.J.S.A.* 18A:8–24 would leave the non-building municipalities with a "substantial shortfall … of [the former regional district's] assets based on the proportions of the District's operating budget that each municipality contributed." 168 *N.J.* at 18–19, 773 *A.2d* 6.

Appellants also argue that the liquid assets should be distributed in strict accordance with *N.J.S.A.* 18A:8–24 because the constituent municipalities agreed to distribute the former regional district's liquid assets in that manner. However, the record indicates that the districts never executed a formal agreement to make such a distribution. At most, the superintendents and business administrators of the constituent districts assumed in discussions before the Court's decision in *Union County* that *N.J.S.A.* 18A:8–24 would govern the distribution of liquid assets. A proposed written

agreement that would have provided for such a method of distribution was never executed. Moreover, we question whether the school administrators would have had authority to enter into such an agreement, without authorization from the school boards of the constituent municipalities and perhaps also their governing bodies. In any event, the Township of Waterford notified the County Superintendent before he issued his report that it objected to the proposed distribution of the regional district's liquid assets in accordance with *N.J.S.A.* 18A:8–24, and it sought the same form of relief from that distribution formula that the Court had authorized in *Union County.* Therefore, there is no basis for concluding that the constituent municipalities entered into a binding agreement to distribute the former regional district's liquid assets in strict conformity with *N.J.S.A.* 18A:8–24.

At various points in their briefs, appellants suggest that the true value of the former regional district's liquid assets was less than the amounts at which they were appraised by the County Superintendent. However, if appellants questioned those values, they should have sought a hearing before the ALJ on this issue. Instead, they accepted those values in their submissions to the ALJ and agreed that the case could be heard in a summary fashion on the issue of the applicability of *Union County* to this case.

Lindenwold also argues that the State Board erred in denying its motion for a remand to take testimony regarding whether the constituent districts had agreed to a division of the non-liquid assets before the County Superintendent's report was issued, whether a sending-receiving relationship constituted a quantifiable asset, and to afford the County Superintendent the opportunity to defend his report. However, if Lindenwold had relevant evidence, it should have proffered that evidence when the matter was first presented to the ALJ rather than waiting until after the ALJ had issued a recommended initial decision and the Commissioner had issued his decision. Moreover, even when Lindenwold made its belated motion to the State Board for a remand, it failed to proffer

any evidence that could support a finding that there was a binding agreement among the constituent municipalities regarding the distribution of the liquid assets, or that the existence of sending-receiving relationships between certain building and non-building districts is a quantifiable asset relevant to a determination of the equitable distribution of the assets of a former regional district. Moreover, Lindenwold did not indicate how the County Superintendent's testimony could add anything to his comprehensive written report.

Appellants did not argue before the ALJ that the existence of a sending-receiving relationship between former members of a regional school district is relevant to a determination of the equitable distribution of the district's liquid assets. This issue was apparently raised sua sponte by the ALJ without notice to the parties. Although appellants now argue that this part of the ALJ's decision was correct, they have not submitted any authority to support his conclusion.

The governing statutory provision states that "the board of education of the receiving district shall determine a tuition rate to be paid by the board of education of the sending district to an amount not in excess of the actual cost per pupil as determined under rules prescribed by the commissioner and approved by the state board." *N.J.S.A.* 18A:38–19(a). Pursuant to this authority, the State Board of Education has adopted detailed regulations prescribing how the actual cost per pupil should be calculated. *See N.J.A.C.* 6A:23–3.1. There is no evidence that any non-building district in the former regional district that has entered into a sending-receiving relationship with a building district is paying less than the "actual costs" of educating the pupils from its district. Moreover, if the Commissioner determined that any sending district was paying less than the actual costs of educating pupils from that district, he could require that sending district to make an additional adjusted payment to the receiving district. *N.J.A.C.* 6A:23–3.1(f)(7). Nor have appellants suggested that there is any foundation, other than the payment of less than the

"actual costs" of educating a sending district's pupils, for quantification of the benefit to a sending district of a sending-receiving relationship. Therefore, there is no basis for concluding that a former constituent district of a regional school district that enters into a sending-receiving relationship with another former member of the district derives a quantifiable benefit from that relationship that could justify denial of its full share of the liquid assets of the former regional district under *Union County*.

■ We also reject Lindenwold's argument that the State Board's final decision must be reversed because the same Deputy Attorney General provided representation to both the County Superintendent and the Commissioner. Because the County Superintendent is a subordinate official in the Department of Education under the supervision of the Commissioner, we perceive nothing inappropriate in the same Deputy Attorney General providing representation to both officials at different stages in the administrative process. Moreover, even if there were some impropriety in a Deputy Attorney General performing such multiple roles, it would not affect the ultimate result, which is based on the Commissioner's and State Board's conclusion that, as in *Union County*, the circumstances of this case warrant a deviation from strict application of the distribution formula set forth in *N.J.S.A.* 18A:8–24.

■ Finally, we consider Waterford's cross-appeal from the part of the State Board's decision that denied Waterford's application for interest upon the amounts that the building districts were ordered to pay the non-building districts for the value of the regional district's liquid assets. Waterford's interest claim was based on *N.J.A.C.* 6A:3–1.17, which provides in pertinent part:

(a) The Commissioner may, pursuant to the criteria of this section, award ... postjudgment interest in any circumstance in which a petitioner has sought such relief and has successfully established a claim to a monetary award.

  . . . .

(c) The following criteria shall be applied when awarding interest:

  . . . .

2. The Commissioner shall award postjudgment interest when a respondent has been determined through adjudication to be responsible for such payment, the precise amount of such claim has been established or could have been established and the party responsible for the payment of the judgment has neither applied for nor obtained a stay of the decision but has failed to satisfy the claim within 60 days of its award.

In denying Waterford's interest claim, the State Board stated:

That regulation ... was designed to establish criteria for the awarding of post-judgment interest. 18 *N.J.R.* 405(a). Since the Commissioner's decision in this case established July 1, 2004 as the due date for the first annual installment payment to the non-building districts, there are not any payments due and owing at this time. Consequently, a request for post-judgment interest under the criteria established by *N.J.A.C.* 6A:3–1.17 would be premature.

Nor do we find that interest should be awarded in order to create a more equitable distribution scheme as Waterford argues. The five-year installment payment plan, which was proposed by the County Superintendent in his report and accepted by the Commissioner in his decision, will minimize the impact of the reallocation of the liquid assets on the educational budgets of the districts with buildings, thereby avoiding the possibility that the education programs offered by these districts may be negatively affected by such reallocation. The imposition of interest payments on the building districts would be contrary to this objective, and, like the Commissioner, we decline to do so.

■ A final decision of the State Board of Education "will not be upset unless unreasonable, unsupported by the record or violative of the legislative will." *Nelson v. Bd. of Educ. of Twp. of Old Bridge,* 148 *N.J.* 358, 364, 689 *A.2d* 1342 (1997) (quoting *Capodilupo v. Bd. of Educ. of Twp. of W. Orange,* 218 *N.J.Super.* 510, 515, 528 *A.2d* 73 (App.Div.), *certif. denied,* 109 *N.J.* 514, 537 *A.2d* 1300 (1987)). Even assuming *N.J.A.C.* 6A:3–1.17 would provide authorization for an award of interest in the circumstances of this case, there was nothing unreasonable or violative of legislative intent in the State Board's decision to withhold interest on the building districts' deferred payments to the non-building districts for the value of the liquid assets of the former regional district.

Affirmed.