**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1347-17T3

DORIT SNOW,

     Petitioner-Appellant,

v.

BOARD OF EDUCATION OF
THE TOWNSHIP OF BRICK,
OCEAN COUNTY,

     Respondent-Respondent.

_____

Argued November 28, 2018 - Decided  December 7, 2018

Before Judges Reisner and Mawla.

On appeal from the Commissioner of Education, Docket No. 98-3/16.

Kathleen Naprstek Cerisano argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, PC, attorneys; Kathleen Naprstek Cerisano, of counsel and on the briefs).

Sebastian Ferrantell argued the cause for respondent Brick Township Board of Education (Montenegro,

Thompson, Montenegro & Genz, PC, attorneys; Sebastian Ferrantell, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Beth N. Shore, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Dorit Snow appeals from an October 12, 2017 final decision of the Commissioner of Education upholding her termination because her occupational therapist license expired. The Commissioner found that N.J.A.C. 6A:9B-5.1(c) requires removal of any teaching staff member who fails to maintain a mandated license or certification, regardless of tenure or hardship. We affirm.

The following facts are taken from the record. Petitioner has been employed as an occupational therapist by respondent during various time periods beginning in January 1991 through June 1998, then in 2006, and most recently, on a full-time basis beginning in September 2007. Pursuant to N.J.S.A. 18A:28-5, petitioner possessed an occupational therapist license, issued through the State of New Jersey by the Occupational Therapy Advisory Council, during her employment with respondent.

Petitioner's difficulties began prior to the 2015-2016 school year. On September 2, 2015, she left work early because she claimed to be experiencing dizziness, difficulty breathing, feelings of anxiety, and severe depression resulting from marital discord with her husband. This was the last day petitioner reported to work.

When petitioner failed to return to work on September 3 and 4, 2015, respondent made several unsuccessful attempts to contact her. Respondent certified it attempted to contact petitioner by telephone and text, and also requested a welfare check by the Manalapan Police Department.

On September 8, 2015, petitioner emailed her supervisor, informing her she was ill and had left the country to live with her parents in Israel, where she was receiving medical treatment. Petitioner's supervisor responded the same day by reply email as follows:

> Thank you for making contact with me. At this time you have enough sick days until the end of September. . . . On the [d]istrict [w]ebsite there are forms that you will have to fill out so that you can take a medical leave of absence [because] you are unable to return to work before the end of September. Of course your leave would be without pay. I wish you well and a speedy [recovery].

On September 30, 2015, petitioner's occupational therapist license lapsed. The same day, a letter was sent to petitioner's home in New Jersey indicating

3

respondent had not received her request for leave, any update on her situation since the September 8, 2015 communication, or any indication when petitioner would be returning to work. Respondent's letter informed petitioner her employment would be terminated on grounds of abandonment effective October 5, 2015. Petitioner did not see this letter until she returned to New Jersey in November 2015.

The next contact petitioner had with respondent was on October 21, 2015, when she emailed her supervisor stating: "I . . . need to apologize to you for my delayed responses . . . I am doing well and feeling much better with more energy and enthusiasm." On October 28, 2015, petitioner emailed her supervisor indicating she and her husband were planning to return to the United States the following week and stated:

> I also wanted to ask you again about my leave entitlement. You mentioned I had enough sick leave to carry me to end of September. Is there any way you could advance me more leave with pay, as it will help me out financially, tremendously!

On January 7, 2016, petitioner left a voicemail informing respondent her occupational therapist license had lapsed. The following day, respondent sent a letter to petitioner advising a meeting was scheduled for January 14, 2016, at Brick Memorial High School, pertaining to her employment. Petitioner did not

A-1347-17T3

attend the meeting. Respondent voted to terminate petitioner's employment because her license had lapsed. The following day, respondent sent petitioner formal notice of her termination by certified mail.

On January 18, 2016, petitioner emailed her supervisor seeking to appeal her termination. In this email, petitioner claimed she had "not been medically cleared to go back to work and submitted a note from [her] doctor that [she would] be able to return on [February 1, 2016]." Petitioner renewed her occupational therapy license on January 20, 2016.

Following the filing of petitioner's administrative appeal, the parties filed competing motions for summary judgment. Respondent's motion for summary judgment was granted by an administrative law judge (ALJ). The Commissioner adopted the ALJ's decision and dismissed petitioner's appeal. This appeal followed.

I.

"[We] have 'a limited role' in the review of [agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "In order to

A-1347-17T3

reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (quoting Henry, 81 N.J. at 580). The burden of proving an agency action is arbitrary, capricious, or unreasonable is on the challenger. Bueno v. Bd. of Trs., 422 N.J. Super. 227, 234 (App. Div. 2011) (citations omitted).

We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "It is settled that [a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). "[W]e are not bound by the agency's legal opinions." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to de novo review." Ibid. (citing Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

On appeal, petitioner claims she was wrongfully terminated because respondent failed to file tenure charges and hold a tenure hearing. She argues the Commissioner's decision overlooked that she had a valid excuse for permitting her certification to lapse, namely, the stress caused by her marital discord, and that she was not servicing students as a school occupational therapist during her medical leave. She also argues respondent's true reason for terminating her was to avoid accommodating her mental health condition.

II.

"The tenure of educational personnel is authorized by the Tenure Act[.]" Nelson v. Bd. of Educ. of Twp. of Old Bridge, 148 N.J. 358, 363 (1997) (citing N.J.S.A. 18A:28–1 to –18). The Act's purpose "is to aid in the establishment of a competent and efficient school system by affording [public school employees] 'a measure of security in the ranks they hold after years of service.'" Carpenito v. Bd. of Educ. of Borough of Rumson, Monmouth Cty., 322 N.J. Super. 522, 528-29 (App. Div. 1999) (quoting Viemeister v. Prospect Park, Passaic Cty., Bd. of Educ., 5 N.J. Super. 215, 218 (App. Div. 1949)).

"The Tenure laws are an 'important expression of legislative policy' and should be given 'liberal support, consistent, however, with legitimate demands

for governmental economy.'" Id. at 529 (quoting Viemeister, 322 N.J. Super. at 218).

> The ultimate administrative decision-maker in reviewing law concerning school matters is the State Board, whose determination should not be vacated absent a showing that the decision is arbitrary or capricious, that it lacks support in the record, or that it violates legislative policies expressed or fairly to be implied in the statutory scheme administered by that agency.
>
> [Ibid. (citing Dore v. Bd. of Educ. of Bedminster Twp., 185 N.J. Super. 447, 453 (App. Div. 1982)).]

The Tenure Act requires:

> The services of all [public school] teaching staff members . . . and such other employees as are in positions[1] which require them to hold appropriate certificates issued by the board of examiners, serving in any school district or under any board of education, excepting those who are not the holders of proper certificates in full force and effect . . . shall be under tenure during good behavior and efficiency and they shall not be dismissed or reduced in compensation except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause[.]
>
> [N.J.S.A. 18A:28-5(a) (emphasis added).]

---

[1] "[T]he word 'position' includes any office, position or employment." N.J.S.A. 18A:28-1.

However, "[n]o teaching staff member shall acquire tenure in any position in the public schools in any school district . . . who is not the holder of an appropriate certificate for such position." N.J.S.A. 18A:28-4.

N.J.S.A. 18A:6-10 governs the dismissal of employees under tenure in the public school system. In pertinent part, it states:

> No person shall be dismissed . . . if [she] is or shall be under tenure of . . . position . . . except for inefficiency, incapacity, unbecoming conduct, or other just cause, and then only after a hearing held . . . by the commissioner, or a person appointed by him to act in his behalf, after a written charge or charges, of the cause or causes of complaint, shall have been preferred against such person, signed by the person or persons making the same, who may or may not be a member or members of a board of education, and filed and proceeded upon[.]

However, N.J.S.A. 18A:28-14 provides:

> The services of any teaching staff member who is not the holder of an appropriate certificate, in full force and effect, issued by the state board of examiners under rules and regulations prescribed by the state board of education may be terminated without charge or trial[.]

The regulations pertinent to petitioner's employment state:

> To be eligible for the school occupational therapist endorsement, a candidate shall have:
>
> 1. A bachelor's degree from a regionally accredited college or university;

2. Completed a program in occupational therapy from an approved school; and

3. <u>A currently valid license issued by the New Jersey Occupational Therapy Advisory Council</u>.

[N.J.A.C. 6A:9B-14.11(b) (emphasis added).]

There is no dispute petitioner lacked the certifications required by N.J.A.C. 6A:9B-14.11(b) for employment with respondent. Petitioner's January 7, 2016 voicemail informed respondent she had let her certifications lapse on September 30, 2015. Therefore, respondent could terminate petitioner, pursuant to N.J.S.A. 18A:28-14, without a hearing. As the Commissioner noted, the fact petitioner was not assisting students during the time period her license had lapsed was not an exception to N.J.S.A. 18A:28-14 because, pursuant to N.J.A.C. 6A:9B-5.1(c), "it is mandatory for districts to remove individuals who do not have required licenses[.]" Therefore, the Commissioner's ruling was not arbitrary, capricious, unreasonable, or unsupported by substantial credible evidence in the record.

Finally, in affirming the Commissioner's determination, we do not reach petitioner's claim that respondent's actions were motivated by a desire to avoid accommodating petitioner's medical needs. The record is devoid of facts supporting this contention, and it was not raised before the Commissioner.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1347-17T3