689 A.2d 1342

G. MICHAEL NELSON, PETITIONER–RESPONDENT, v. BOARD
OF EDUCATION OF THE TOWNSHIP OF OLD BRIDGE,
MIDDLESEX COUNTY, RESPONDENT–APPELLANT.

Argued January 22, 1997—Decided March 12, 1997.

*Todd A. Wigder*, Deputy Attorney General, argued the cause for appellant New Jersey State Board of Education (*Peter G. Vernie-ro*, Attorney General of New Jersey, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel).

*Francis X. Journick, Jr.*, argued the cause for appellant Board of Education of the Township of Old Bridge, etc. (*Wilentz, Goldman & Spitzer*, attorneys; *Harold G. Smith*, of counsel).

*Gail Oxfeld Kanef* argued the cause for respondent (*Balk, Oxfeld, Mandell & Cohen*, attorneys).

*Michael F. Kaelber* argued the cause for amicus curiae New Jersey School Boards Association (*Susan E. Galante*, Director, Legal Department, attorney; *Mr. Kaelber* and *Ms. Galante*, on the brief).

*Nathanya G. Simon* submitted a brief on behalf of amicus curiae Bloomfield Board of Education (*Schwartz Simon Edelstein Celso & Kessler*, attorneys; *Ms. Simon* and *Thomas Russo*, on the brief).

The opinion of the court was delivered by

GARIBALDI, J.

This appeal requires the Court again to examine the laws governing tenure of educational personnel. G. Michael Nelson, respondent, who possesses an administrative certificate with separate principal and supervisor endorsements, seeks to transfer his tenure status achieved under his supervisor endorsement to his principal endorsement. We must determine whether the specific positions listed in *N.J.S.A.* 18A:28–5 are separately tenurable and, if so, whether tenure obtained under one endorsement to an

administrative certificate may be transferred to another endorsement under that certificate.

## I

In 1975, G. Michael Nelson was first employed as a teaching staff member by the Old Bridge Board of Education (Old Bridge). Nelson is the holder of an administrative certificate with separate supervisor and principal endorsements issued by the New Jersey Commissioner of Education (the Commissioner). Nelson received his administrative certificate with a supervisor endorsement in February 1978. He received the principal endorsement to his administrative certificate in July 1978.

On September 21, 1982, Old Bridge appointed Nelson to the position of Department Chairperson of Industrial Arts at Cedar Ridge High School. Nelson qualified for that position by reason of his supervisor endorsement to his administrative certificate. On September 15, 1985, Nelson achieved tenure in that position.

On May 29, 1990, Old Bridge eliminated Nelson's position of Chairperson of Industrial Arts as part of a reduction in force (RIF). Thereafter, Nelson was reassigned to the position of teacher of Industrial Arts for the 1990–1991 school year. Nelson has held that position since his reassignment. Nelson never served in the capacity of administrator, principal, or vice principal under his principal endorsement.

In October 1993, Old Bridge filled an elementary principal position at the Cooper Elementary School with a non-tenured individual. On December 2, 1993, Nelson filed a petition of appeal with the Commissioner claiming a tenure right to the principal position at the Cooper Elementary School, maintaining that the tenure he had achieved under his supervisor endorsement as Chairperson of Industrial Arts extended to that principal's position.

The matter was transferred to the Office of Administrative Law. Relying primarily on *Dennery v. Board of Education,* 131 *N.J.*

626, 622 A.2d 858 (1993), the Administrative Law Judge (ALJ) granted summary judgment to Nelson and ordered Old Bridge to install Nelson as principal of the Cooper Elementary School. Nelson was also awarded an amount representing the difference in salary between his present position and the principal position from December 1993 until the date of his installation as principal.

The Commissioner reversed the ALJ's decision and granted summary judgment to Old Bridge. The Commissioner cited administrative precedent holding that under the Tenure Act "tenure is achieved in a particular 'position'" and that "tenure can accrue in [a separately tenurable position, such as principal] only as a result of actual work experience in the position." The Commissioner concluded that since Nelson never served in a principal's position, he could have no tenure claim to that position.

The Commissioner expressly rejected the ALJ's holding that *Dennery* changed those long-standing tenure principles. The Commissioner concluded that "the *Dennery* court did not address the separately tenurable positions specifically enumerated in *N.J.S.A.* 18:28–5, nor did it consider whether tenure could be transferred across endorsements to the administrative certificate at issue herein." Finally, the Commissioner noted that a contrary decision would disrupt sound educational policy by introducing chaos into the tenure rules.

The New Jersey State Board of Education (State Board) affirmed the Commissioner's decision. In an unpublished opinion, the Appellate Division panel reversed the State Board. The panel relied primarily on *Dennery* to conclude that Nelson's tenure under the supervisor endorsement of his administrative certificate was transferable to the principal endorsement of that same certificate. The court explicitly rejected the State Board's assertion that *N.J.S.A.* 18A:28–5 mandates that the positions listed in the Statute are separately tenurable. The court concluded that *Dennery* requires "that a tenured supervisor under an administrative certificate who satisfies the requirements for service as a principal must be appointed to that position over a non-tenured individual."

After Old Bridge and the State Board filed petitions for certification with this Court, the New Jersey Legislature enacted *L.* 1996, *c.* 58, which amended *N.J.S.A.* 18A:28–5, effective June 28, 1996 (the Amendment).

We granted Old Bridge's and the State Board's petitions for certification. 146 *N.J.* 499, 683 *A.*2d 202 (1996).[1]

## II

The tenure of educational personnel is authorized by the Tenure Act, *N.J.S.A.* 18A:28–1 to –18. A person who is employed in the public schools must normally "hold[ ] ... a valid certificate to teach, administer, direct or supervise the teaching, instruction or educational guidance of ... pupils in such public schools." *N.J.S.A.* 18A:26–2. The State Board has implemented the certification requirement by authorizing three certificates that an educator may hold: instructional, administrative, and educational services. *N.J.A.C.* 6:11–2.3. An educator may hold more than one type of certificate. In addition to the three types of certificates, the State Board has also designated "special endorsements" under each type of certificate, which identify the educational subjects or assignments that share common traits. *Ibid.*

Employment in a specific assignment requires that an educator hold the appropriate endorsement. *N.J.A.C.* 6:11–6.1, –6.2. An individual may possess multiple endorsements under a certificate, qualifying that person to be employed in the positions covered by the respective endorsements. To obtain each separate endorsement, the candidate must meet certain specific requirements. In addition to certification, an educator must serve a probationary period in a given position under a designated certificate to achieve tenure.

---

[1] The Court also granted the motions of the New Jersey School Boards Association and the Bloomfield Board of Education to appear as *amicus curiae.*

Prior to the enactment of the Amendment, *N.J.S.A.* 18A:28–5 (Section 28–5), which establishes the guidelines for achieving tenure, read in pertinent part:

> The services of all teaching staff members including all *teachers, principals other than administrative principals, assistant principals, vice principals, assistant superintendents, and all school nurses* ... and any other nurse performing school nursing services and such other employees as are in positions which require them to hold appropriate certificates issued by the board of examiners ... shall be under tenure during good behavior and efficiency and they shall not be dismissed or reduced in compensation ... after employment in such district or by such board for:
>
> (a) Three consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose; or
>
> (b) Three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or
>
> (c) The equivalent of more than three academic years within a period of any four consecutive academic years.
>
> [*N.J.S.A.* 18A:28–5 (emphasis added).]

## III

 The interpretation of a statute by the administrative agency charged with its enforcement is entitled to great weight. *See GE Solid State, Inc. v. Director, Div. of Taxation,* 132 *N.J.* 298, 306, 625 *A.*2d 468 (1993); *Merin v. Maglaki,* 126 *N.J.* 430, 436–37, 599 *A.*2d 1256 (1992). "[T]he ultimate administrative decision-maker in reviewing ... school matters is the State Board, whose final decision will not be upset unless unreasonable, unsupported by the record or violative of the legislative will." *Capodilupo v. Board of Educ.,* 218 *N.J.Super.* 510, 515, 528 *A.*2d 73 (App.Div.), *certif. denied,* 109 *N.J.* 514, 537 *A.*2d 1300 (1987). As this Court noted in *Dennery:*

> The Legislature intended that the State Board "promulgate specifications concerning categories of 'certification' " and that courts not intervene "unless the State Board's decision is palpably arbitrary." Agency regulations are accorded substantial deference based on the recognition that "certain subjects are within the peculiar competence of the agency."
>
> [*Dennery, supra,* 131 *N.J.* at 637, 622 *A.*2d 858 (citations omitted).]

"The delegation of regulatory and administrative responsibility over tenure to the State Board is based on the complexity and

specialized nature of the subject of teacher tenure." *Ibid.* (citing *Ellicott v. Board of Educ.*, 251 *N.J.Super.* 342, 350, 598 *A.*2d 237 (App.Div.1991)).

In his decision below, which was explicitly adopted by the State Board, the Commissioner determined that supervisors and principals are separately-tenurable positions under the Statute. The parties recognize that the distinction in tenure law between positions that are separately tenurable and positions that are not listed in Section 28-5 has been recognized consistently by the State Board and the Commissioner. In fact, prior to and after the Appellate Division decision in this case, every administrative decision that considered the issue has held that educators do not have bumping rights across the administrative certificate.

Prior to this decision the Appellate Division also recognized the distinction between separately-tenurable Section 28-5 positions and positions not listed in Section 28-5. The instant case is one of a long line of tenure rights decisions that concerned tenured teaching staff members who, after their positions were abolished or reduced as a result of a RIF, claimed an entitlement to a position to which they were not entitled under the seniority regulations. *See Ellicott, supra* (finding that tenured speech correctionist also had tenure as learning disabilities consultant under educational services certificate where neither assignment was specifically listed in statute); *Bednar v. Westwood Bd. of Educ.*, 221 *N.J.Super.* 239, 534 *A.*2d 93 (App.Div.1987) (holding tenured art teacher who lost elementary school job entitled to tenure in secondary art teacher assignment under instructional certificate where both assignments were within single "position" of teacher listed in statute); *Capodilupo, supra* (holding teacher with elementary and secondary physical education endorsements was tenured in both jobs under instructional certificate where both assignments fell within single "position" of teacher listed in statute).

In *Ellicott,* the Appellate Division agreed with the State Board's emphasis that a staff member's tenure rights in the wake of a RIF

must be gauged by evaluating whether the individual had acquired tenure in the specific position. Discussing the concept of a tenurable position, the Appellate Division stated:

> As the State Board properly observed, what is clear from the statutory scheme is that tenure is achieved in a specific "position," and the scope of the tenured position is initially limited by the "certificate" the teaching staff member must hold to satisfy the prerequisite of qualifications for his or her employment ....
>
> [*Ellicott, supra,* 251 *N.J.Super.* at 348, 598 *A.2d* 237.]

The Appellate Division, thus, agreed with the State Board's conclusion that "with the exception of the position of school nurse, [a specific tenurable position under *N.J.S.A.* 18A:28–5,] the petitioner enjoyed tenure in all positions for which her educational services certificate qualified her ... despite the fact that she had not served the requisite probationary period under *N.J.S.A.* 18A:28–5 in that position." *Id.* at 345, 598 *A.2d* 237.

The State Board's determination in the instant action, therefore, was based on a long line of court decisions and administrative decisions that have held that the positions specifically enumerated in the Statute, including principal, are separately tenurable. *See also Kaprow v. Board of Educ.,* 255 *N.J.Super.* 76, 92, 604 *A.2d* 640 (App.Div.1992) ("We agree that 'Assistant Superintendent' is a separately tenurable position under *N.J.S.A.* 18A:28–5 ...."), *aff'd,* 131 *N.J.* 572, 622 *A.2d* 237 (1993).

We are unpersuaded by the ALJ's and the Appellate Division's reliance on the *dicta* in *Dennery, supra,* 131 *N.J.* at 634, 622 *A.2d* 858, that "an educator who has attained tenure by virtue of the requisite service in a specific position will have tenure with respect to all positions under the particular certificate." That case, of course, concerned only the transferability of tenure between certificates, as opposed to separate endorsements to an individual certificate. Moreover, none of the positions specifically listed in Section 28–5 were before the Court. What is most important, however, is that in holding that tenure was not transferable between certificates, we emphasized that the Court should defer to the State Board in its interpretation of complex tenure laws, *id.* at 637, 622 *A.2d* 858, and that the Appellate Division should be

reversed because it would "obviate as a tenure requirement actual service in a position included under a certificate." *Id.* at 638, 622 *A.*2d 858. Those positions fully support our determination in this case.

IV

Moreover, the State Board asserts that permitting an educator to transfer tenure rights to a separately-tenurable position, such as principal, is unsound public policy. There are four separate endorsements to an administrative certificate: school administrator, principal, supervisor and school business administrator. *N.J.A.C.* 6:11–9.3. The positions available under the separate endorsements include principal, assistant principal, vice-principal, supervisor of instruction, superintendent, assistant superintendent, finance manager, director, and superintendent for curriculum. *Ibid.* Therefore, if the Appellate Division opinion was to apply to the positions listed in Section 28–5, a tenured school business administrator, concerned with purchasing, would be eligible for a principalship after a RIF. The tenure achieved under the finance manager endorsement would be transferable to the principal endorsement even if the individual had no prior experience in that position.

In the instant action, the supervisory position in which Nelson acquired tenure primarily involved the supervision and assessment of high school industrial arts teachers. *N.J.A.C.* 6:11–9.3(c). By contrast, the elementary school principal's job that Nelson claims is the school's chief administrative post with the sole responsibility for establishing policy for the entire school and controlling every facet of its operation, including all issues concerning staff, students, buildings, and budgets. *N.J.A.C.* 6:11–9.3(b) and –9.5. On a district-wide level, a principal must serve as the school's liaison with the local board, parents and the community as a whole. It seems clear that the two positions are not significantly similar even though both endorsements fall under the administrative certificate. Those are but two examples. Many more examples

can be envisioned. Such appointments would promote unsound education policy.

After the Appellate Division decision in this case, the Legislature amended the Statute to make clear that the positions listed in *N.J.S.A.* 18A:28–5 are indeed separately tenurable. Accordingly, deference to the State Board's longstanding interpretation of Section 28:5 is even more compelling. The State Board's determination was neither unreasonable, unsupported by the record, nor violative of any legislative will. We continue to defer to the expertise of the State Board in tenure matters and recognize the educationally unsound policy results that would flow from applying Nelson's rationale to the positions listed in Section 28–5.

## V

That curative amendment to Section 28–5 further establishes that the Appellate Division misread legislative intent and wrongly awarded tenure to Nelson, although he never worked as a principal. *See, e.g., Edwards v. Mayor & Council of Borough of Moonachie,* 3 *N.J.* 17, 24–25, 68 *A.*2d 744 (1949) (finding amendments carry "great weight" in determining intention of original statute); *Boyd v. Marini,* 132 *N.J.Super.* 324, 328, 333 *A.*2d 559 (App.Div.1975) (holding that subsequent legislation is "convincing" aid to interpretation of earlier law). Moreover, the Legislature has indicated in *L.* 1996, *c.* 58 that those curative amendments have retrospective application to all tenured staff members. The Amendment states in pertinent part:

> The Legislature finds and declares that, due to the interpretation of *N.J.S.* 18A:28–5 by the Appellate Division in the case of *Nelson v. Board of Education of the Township of Old Bridge,* a *clarification of that statute is necessary in order to continue the traditional practice* of providing that tenure is acquired in one of the specifically enumerated positions only if the individual has served for the requisite statutorily required period of time in that position.
>
> [*L.*1996, *c.* 58, § 1 (emphasis added).]

The Amendment further states that:

> The services of all teaching staff members employed in the positions of teacher, principal, other than administrative principal, assistant principal, vice principal, assistant superintendent, and all school nurses ... and such other employees as

are in positions which require them to hold appropriate certificates issued by the board of examiners ... shall be under tenure during good behavior and efficiency and they shall not be dismissed or reduced in compensation ...

For purposes of this chapter, *tenure in any of the administrative or supervisory positions enumerated herein shall accrue only by employment in that administrative or supervisory position. Tenure so accrued shall not extend to any other administrative or supervisory position* ...

[*Id.* at § 2 (emphasis added).]

The Amendment concludes that it "shall take effect immediately and shall apply to all individuals who have acquired tenure pursuant to *N.J.S.* 18A:28–5 or any prior statute." *Id.* at § 3.

Although courts favor the prospective application of statutes, *see Phillips v. Curiale*, 128 *N.J.* 608, 615, 608 *A.2d* 895 (1992), that rule is to aid the court in the search for legislative intent. *Twiss v. State*, 124 *N.J.* 461, 466, 591 *A.2d* 913 (1991) (citing *Rothman v. Rothman*, 65 *N.J.* 219, 224, 320 *A.2d* 496 (1974)).

Courts should not apply the rule mechanistically. Rather, "[w]here ... supervening considerations clearly compel a contrary determination, this, like all other rules of statutory construction[,] must give way." When the Legislature does not clearly express its intent to give a statute prospective application, a court must determine whether to apply the statute retroactively.

[*Ibid.* (citations omitted).]

This Court applies a two-part test to determine whether a statute should be applied retroactively. The first question is "whether the Legislature intended to give the statute retroactive application." *In re D.C.*, 146 *N.J.* 31, 50, 679 *A.2d* 634 (1996) (citation omitted). The second inquiry is "whether retroactive application of the statute will result in either an unconstitutional interference with 'vested rights' or a 'manifest injustice.' " *Ibid.*

There are three circumstances that will justify retroactive application of a statute: (1) where the Legislature has declared such an intent, either explicitly or implicitly; (2) where the statute is curative; and (3) where the expectations of those affected by the statute warrant retroactive application. *See Id.* at 51, 679 *A.2d* 634 (citing *Gibbons v. Gibbons*, 86 *N.J.* 515, 522–23, 432 *A.2d* 80 (1981)).

An examination of this Amendment discloses that it meets all three tests. The Amendment states that it "shall take effect immediately and shall apply to all individuals who have acquired tenure pursuant to *N.J.S.* 18A:28–5 or any prior statute." *L.* 1996, c. 58, § 3. The plain language of the Statute reveals that the Amendment is to apply to all individuals who have acquired tenure pursuant to the Statute. It seems clear that such an enactment, therefore, can hardly be found to be prospective. Nelson is included in the group of "individuals who have acquired tenure pursuant to *N.J.S.* 18A:28–5," and, therefore, the Amendment is literally applicable to him.

██ Moreover, the Amendment is curative in nature, and curative legislation is to be retroactively applied. *See In re D.C.,* *supra,* 146 *N.J.* at 51, 679 *A.*2d 634. Under the curative exception to prospective applicability, an amendment to a statute is given retroactive effect if it is designed merely to carry out or explain the intent of the original statute. *See Kendall, supra,* 219 *N.J.Super.* at 287, 530 *A.*2d 334.

> In essence, an amendment which falls within the curative exception can be retroactively applied consistent with the general rule of prospectivity because its purpose is to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act.
>
> [*Id.* at 288, 530 *A.*2d 334.]

The Amendment was expressly intended to correct a misapplication of the Statute. Section 3 of the Amendment states that the Appellate Division decision below made

> a *clarification of that statute necessary in order to continue the traditional practice* of providing that tenure is acquired in one of the specifically enumerated positions only if the individual has served for the requisite statutorily required period of time in that position.
>
> [*L.* 1996, c. 58, § 1 (emphasis added).]

Such language makes it obvious that the Amendment is curative, in that its intent is to *clarify,* and it should, therefore, be retroactively applied.

Nor does applying the Amendment retroactively result in "manifest injustice" or the loss of a "vested right." This Court has

defined a "vested right" as "a present fixed interest ... which should be protected against arbitrary state action." *Phillips, supra,* 128 *N.J.* at 620, 608 *A.*2d 895 (citation omitted). Other New Jersey courts have defined the right by stating what a "vested right" is not: "There can be no vested right in the continued existence of a statute or rule of the common law which precludes its change or repeal." *Ibid.* (citations omitted). Furthermore, this Court has stated "that retroactive application of civil legislation generally does not violate due process unless the consequences are 'particularly harsh and oppressive.'" *Id.* at 622, 608 *A.*2d 895 (citations omitted).

In the case of the Amendment to *N.J.S.A.* 18A:28–5, no "vested rights" are threatened by its retroactive application to Nelson. As indicated earlier, since the Amendment is, in the Legislature's words, merely a "clarification" that the doctrine of "separate tenurability" was and continues to be the law for positions specifically enumerated in Section 28–5, including the position of principal, the Amendment denies Nelson nothing. After the Amendment, Nelson retains exactly the same rights he possessed prior to the Amendment.

Moreover, the Amendment represents a public policy determination by the Legislature that our public schools are better off when principals, assistant principals, vice principals, and assistant superintendents must achieve tenure through actual service in those positions. As a result, the Amendment is addressed to the public interest and should be applied retroactively to secure the greatest possible benefit to the public.

The Amendment does not disturb the tenure interest Nelson achieved as Chairperson of Industrial Arts. Rather, the Amendment prevents Nelson from transferring his tenure status to the principal position after a RIF. Therefore, the relevant question is whether Nelson held "a legitimate expectation" that his tenure status was transferable to the "separately tenurable" position of principal. In view of the many judicial and administrative decisions decided prior to the instant action, Nelson could not have

held "a legitimate expectation" that his tenure status was transferable. In fact, prior to the Appellate Division decision in *Nelson*, no court or administrative decision permitted a tenured supervisor to apply his or her tenure status to a principalship. Whether or not it was a proper interpretation of the Statute, the State Board had consistently held that positions listed in *N.J.S.A.* 18A:28–5 were separately tenurable. Therefore it is not "particularly harsh and oppressive" to apply the Amendment retroactively to Nelson. *Phillips, supra,* 128 *N.J.* at 622, 608 *A.2d* 895 (citations omitted).

This Court has stated that the determination of whether "manifest injustice" exists requires a weighing of the public interest in the retroactive application of the statute against the affected party's reliance on the previous law, and the consequences of that reliance. *State v. Caruso,* 291 *N.J.Super.* 430, 439, 677 *A.2d* 795 (App.Div.1996) (citing *Phillips, supra,* 128 *N.J.* at 625, 608 *A.2d* 895). As discussed above, Nelson could not have relied for very long on the "previous law." In addition to the fact that all prior decisions have held that the positions listed in the Statute are separately tenurable, both the Commissioner and the State Board rejected Nelson's claim in the instant action. Therefore, Nelson could not have begun relying on the "previous law" until after the Appellate Division decision in this case.

On the other side of the balance, the public interest in retroactive application is strong. As made clear by the State Board, a prospective application of the Amendment would mean that several other individuals in addition to Nelson, would be entitled to transfer their tenure status to administrative positions listed in the Statute. Such a result could have an adverse impact on public policy. Individuals with no prior experience in critical positions such as vice-principal and principal would be entitled to such appointments. We, therefore, find that there is no "manifest injustice" in applying the Amendment retroactively.

## VI

*N.J.S.A.* 18A:28–5 has consistently been interpreted by the State Board as requiring service in the separately-listed positions

before tenure can be achieved in them. That rule conforms to the Legislature's intent and represents a proper interpretation of the Statute and sound educational policy.

The judgment of the Appellate Division is reversed.

PORITZ, C.J., and HANDLER, POLLOCK, O'HERN, STEIN and COLEMAN, JJ., join in Justice GARIBALDI's opinion.