SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Christopher Maia v. IEW Construction Group (A-3-23) (088010)**

**Argued January 3, 2024 -- Decided May 15, 2024**

**FASCIALE, J., writing for a unanimous Court.**

The Court considers whether plaintiffs' claims as to conduct that preceded the effective date of L. 2019, c. 212 (Chapter 212), which amended the Wage Payment Law (WPL) and the Wage and Hour Law (WHL), were properly dismissed.

Plaintiffs Christopher Maia and Sean Howarth were employed as laborers for defendant IEW Construction Group, which required them to perform "pre-shift" and "post-shift" work. Maia joined IEW in April 2019. From early May 2019, he was not paid for his "pre-shift" and "post-shift" work. Howarth began working for IEW in April 2020. He was never paid for "pre-shift" and "post-shift" responsibilities. Both Maia and Howarth were laid off in November 2021. In April 2022, they filed a class action complaint alleging in part that IEW violated the WHL and WPL.

The trial judge held that Chapter 212 does not apply retroactively and thus dismissed plaintiffs' claims for conduct that arose prior to Chapter 212's effective date of August 6, 2019. The Appellate Division reversed. 475 N.J. Super. 44, 48, 58 (App. Div. 2023). The Court granted leave to appeal. 255 N.J. 282 (2023).

**HELD:** Chapter 212 is to be applied prospectively to conduct that occurred on or after August 6, 2019 -- Chapter 212's effective date -- not retroactively to conduct that occurred before that date. The trial judge properly dismissed the portions of the complaint relying on Chapter 212 but arising from conduct prior to its effective date.

1. As a threshold question, the Court considers the Appellate Division's determination that applying Chapter 212 to conduct occurring prior to its effective date is not a retroactive application, but rather prospective application of a statute "to cases filed after its effective date." See 475 N.J. Super. at 54-56. Both federal law and state law determine whether a statute's application is retroactive by focusing on any changes to the legal consequences created by a statute or amendment. In Landgraf v. USI Film Products, the United States Supreme Court clarified that the relevant inquiry is "whether the new provision attaches new legal consequences to events completed before its enactment." 511 U.S. 244, 269-70 (1994). (pp. 10-12)

1

2.  The Court compares the relevant pre- and post-Chapter 212 provisions of the WPL and WHL and finds that comparison telling.  By adding liquidated damages and a retaliation claim to both the WPL and WHL, attorneys' fees to the WPL, and by extending the statute of limitations in the WHL, Chapter 212 allows plaintiffs to bring new claims with enhanced damages that were not previously available to plaintiffs at the time their injuries occurred, thereby changing the legal consequences of acts.  The changes are not merely procedural; rather, they affect the duties and liabilities involved.  Chapter 212 attaches new legal consequences to events, and applying the provisions of Chapter 212 to conduct "completed before its enactment" would therefore be retroactive application.  W.S. v. Hildreth, 252 N.J. 506 (2023), on which the Appellate Division relied, does not lead to a different conclusion because the amendments to procedural requirements at issue there did not create new damages, change the rights, responsibilities, claims, and defenses that parties can assert, or implicate new legal burdens, unlike Chapter 212.  (pp. 12-19)

3.  Because application of Chapter 212's provisions to conduct prior to the statute's effective date would constitute retroactive application, the Court considers whether such application is appropriate.  New Jersey courts have long followed a general rule that favors prospective application of statutes.  For a statute to apply retroactively, both parts of a two-part test must be satisfied:  first, did the Legislature intend to give the statute retroactive application; and second, will retroactive application of the statute "result in either an unconstitutional interference with vested rights or a manifest injustice."  James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014).  As to the first question, there are three circumstances that justify applying a statute retroactively:  (1) when the Legislature explicitly or implicitly expresses an intent that a law be retroactive; (2) when an amendment is ameliorative or curative; or (3) when the parties' expectations warrant retroactive application.  (pp. 20-23)

4.  None of those three circumstances is present here.  Indeed, the Legislature expressly stated in Section 14 of Chapter 212 that the new provisions "shall take effect immediately," a phrase that New Jersey Courts have repeatedly held to signal prospective application.  Because the first part of the retroactivity test reveals nothing that warrants a departure from the presumptive prospectivity that applies to substantive legislation, the Court does not reach the second part of the test.  For claims based on conduct that occurred prior to August 6, 2019 -- Chapter 212's effective date -- plaintiffs cannot rely on Chapter 212.  (pp. 23-25)

**REVERSED.  The trial court's order partially dismissing the complaint is REINSTATED, and the matter is REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.**

2

SUPREME COURT OF NEW JERSEY

A-3 September Term 2023

088010

Christopher Maia and
Sean Howarth, on behalf
of themselves and all others
similarly situated,

Plaintiffs-Respondents,

v.

IEW Construction Group,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
475 N.J. Super. 44 (App. Div. 2023).

| Argued | Decided |
| --- | --- |
| January 3, 2024 | May 15, 2024 |

Michael J. Riccobono argued the cause for appellant
(Ogletree, Deakins, Nash, Smoak & Stewart, attorneys;
Michael J. Riccobono, on the brief).

Amy C. Blanchfield argued the cause for respondents
(Mashel Law, attorneys; Stephan T. Mashel, of counsel
and on the briefs, and Amy C. Blanchfield, on the briefs).

Thomas F. Doherty argued the cause for amicus curiae
New Jersey Business & Industry Association (McCarter
& English, attorneys; Thomas F. Doherty, David R. Kott,
and Ilana Levin, of counsel and on the brief).

1

James E. Burden argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (McClure Burden, attorneys; James E. Burden, on the brief).

Ravi Sattiraju submitted a brief on behalf of amicus curiae New Jersey Association for Justice (Sattiraju & Tharney, attorneys; Ravi Sattiraju, of counsel and on the brief, and Brendan P. McCarthy, on the brief).

Alex R. Daniel submitted a brief on behalf of amicus curiae The New Jersey Civil Justice Institute (The New Jersey Civil Justice Institute, and White and Williams, attorneys; Anthony M. Anastasio, of counsel, and Alex R. Daniel and Ryan T. Warden, of counsel and on the brief).

John F. Tratnyek submitted a brief on behalf of amicus curiae Academy of New Jersey Management Attorneys (Jackson Lewis, attorneys; John F. Tratnyek and James M. McDonnell, of counsel and on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

Plaintiffs filed a class action complaint seeking compensation for pre- and post-shift labor under provisions of L. 2019, c. 212 (Chapter 212), which amended the Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.15, and the Wage and Hour Law (WHL), N.J.S.A. 34:11-56a to -56a41, by providing additional remedies and by extending the WHL's statute of limitations from two to six years. See L. 2019, c. 212. Chapter 212 took effect on August 6, 2019. See id. § 14. Some of the conduct on which plaintiffs base their

complaint preceded the effective date of Chapter 212; some followed that effective date.

In this appeal, we consider whether plaintiffs' claims as to conduct that preceded Chapter 212's effective date were properly dismissed by the trial judge, who found the amendments to be prospective, or whether the Appellate Division properly reversed that judgment. We hold that the Legislature intended Chapter 212 to be prospective, not retroactive. Thus, Chapter 212 applies to conduct occurring on or after its effective date of August 6, 2019, but not to conduct occurring before then.

We therefore reverse the Appellate Division's judgment, reinstate the trial judge's order partially dismissing plaintiffs' complaint, and remand for further proceedings.

I.

A.

In this appeal challenging an order entered under Rule 4:6-2(e), we derive the pertinent facts from plaintiffs' complaint. Defendant IEW Construction Group (IEW) is a New Jersey-based company that performs construction services for the New Jersey Department of Transportation (DOT). Plaintiffs Christopher Maia and Sean Howarth were employed as laborers for IEW. IEW required plaintiffs to perform "pre-shift" and "post-shift" work

3

which included dropping off and picking up equipment at different worksites and yards operated by the DOT.

Maia joined IEW on or around April 7, 2019. From that date until early May 2019, Maia was paid for the "pre-shift" and "post-shift" duties he performed. Thereafter, Maia was not paid for his "pre-shift" and "post-shift" work. Maia complained but IEW failed to remedy the situation. Maia continued to perform unpaid "pre-shift" and "post-shift" duties until November 2021, when he was laid off.

Howarth began working for IEW on or around April 22, 2020. Howarth was never paid for "pre-shift" and "post-shift" responsibilities during his employment at IEW. Like Maia, Howarth performed unpaid "pre-shift" and "post-shift" duties until November 2021, when he was laid off.

In April 2022, Maia and Howarth filed a class action complaint alleging, among other allegations, that IEW violated the WHL and WPL. On those two counts, plaintiffs seek unpaid wages to compensate and reimburse them, as well as injunctive relief, liquidated damages, and attorneys' fees. Plaintiffs sought class certification for a proposed class to consist of "all current and former laborers and other similarly non-exempt positions employed by IEW in New Jersey at any point in the six (6) years preceding the filing date of [the]

4

Complaint who were not paid for pre-shift and post-shift duties performed."

The question of class certification has not yet been addressed.

B.

IEW filed a Rule 4:6-2(e) motion to dismiss the part of plaintiffs' complaint seeking damages for conduct that occurred prior to Chapter 212's effective date, arguing that Chapter 212 should be applied prospectively, not retroactively. Plaintiffs countered that they were not seeking retroactive application of Chapter 212 but that, even if they were, the Legislature intended Chapter 212 to be "curative" and therefore applied to conduct occurring prior to its effective date.

The trial judge agreed with IEW that Chapter 212 is not to be applied retroactively. Accordingly, the judge granted IEW's motion and dismissed plaintiffs' claims "for conduct that arose prior to August 6th, 2019," but allowed those claims that arose after that date to "survive." (emphasis added).[1]

---

[1] Specifically, the judge entered an order dismissing: (1) plaintiffs' WHL claims arising prior to August 6, 2019, with prejudice; (2) plaintiffs' WHL and WPL claims for liquidated damages arising prior to August 6, 2019, with prejudice; (3) plaintiffs' WPL claim for attorneys' fees with prejudice to the extent the violations occurred prior to August 6, 2019; (4) plaintiffs' WHL claim without prejudice to the extent it seeks to recover alleged unpaid straight-time wages; and (5) plaintiffs' WPL claim with prejudice to the extent it seeks to recover alleged unpaid overtime wages.

Plaintiffs moved for leave to appeal the order partially dismissing their complaint. The Appellate Division granted that motion, reversed the order, and remanded for further proceedings. Maia v. IEW Const. Grp., 475 N.J. Super. 44, 48, 58 (App. Div. 2023). The Appellate Division concluded that "[t]he Legislature . . . did not tether Chapter 212's remedies to the accrual date of an employee's claim. It only prohibited an employee from recovering damages for wages due more than six years prior to the 'commencement' of the action." Id. at 56. Relying on W.S. v. Hildreth, 252 N.J. 506 (2023), the appellate court held that plaintiffs were entitled to the remedies available under the WHL and WPL as of the date of their complaint because "[a]pplying the law in effect at the time a complaint is filed . . . is not applying a statute retroactively; it is applying a statute prospectively to cases filed after its effective date." Id. at 54-56 (quoting Hildreth, 252 N.J. at 522).

Lastly, although it recognized that, unlike the WHL, the WPL never expressly contained any "look-back" period, the Appellate Division determined that "the Legislature intended to provide 'the same opportunity' for aggrieved workers to recover for violations of the WPL as it did for violations under the WHL," including having the same six-year period to recover damages for those violations. Id. at 53-54.

6

We granted IEW's motion for leave to appeal. 255 N.J. 282 (2023). We also granted motions by the New Jersey Association for Justice (NJAJ), New Jersey Civil Justice Institute (NJCJI), New Jersey Business & Industry Association (NJBIA), and Academy of New Jersey Management Attorneys (ANJMA) to appear as amici curiae; the National Employment Lawyers Association of New Jersey (NELA), which appeared as amicus curiae before the Appellate Division, continued to participate.

## II.

IEW asks us to reverse the Appellate Division's judgment and grant its motion to partially dismiss plaintiffs' complaint. IEW distinguishes Hildreth and argues that the appellate court's decision impermissibly "had the effect" of applying Chapter 212 retroactively. As a result, IEW contends that the appellate court erred by failing to consider the "factors" governing retroactive application which, according to IEW, cannot be satisfied. Specifically, IEW argues that Chapter 212 is not "curative," and that the phrase utilized in Chapter 212 -- "[t]his act shall take effect immediately" -- evidences an intent of prospective application.

Plaintiffs argue that the Appellate Division correctly relied on Hildreth and therefore the court's decision should be affirmed. Plaintiffs reiterate that they are not seeking retroactive application of Chapter 212 but instead ask us

to apply Chapter 212 as plainly written. Relying on legislative history, plaintiffs assert that the Legislature intended that those individuals who file a complaint on or after Chapter 212's effective date be allowed to recover Chapter 212's remedies and utilize the WHL's six-year "look-back" period. As an alternative to their prospectivity argument, plaintiffs contended at oral argument that the amendments are "curative" and therefore apply retroactively.

NJBIA, ANJMA, and NJCJI support IEW's position, echoing many of IEW's arguments, specifically that plaintiffs are impermissibly seeking retroactive application of Chapter 212. NJBIA adds that the WHL's "look-back" period is a statute of repose and applying a statute of repose retroactively impermissibly creates or revives a cause of action. ANJMA argues that retroactivity is contrary to the Legislature's intent and would result in manifest injustice and constitutional violations. NJCJI emphasizes that adopting plaintiffs' arguments would undermine our precedent "protecting" against "unfair retroactive applications of new law[s]."

NJAJ and NELA support plaintiffs' position that they are not seeking retroactive application of Chapter 212. Specifically, NJAJ argues that allowing plaintiffs to seek Chapter 212's remedies for conduct occurring prior to its effective date not only advances the remedial purposes of the WHL and WPL, but also prevents the "absurd result" where the WHL's full "six-year

8

look-back period would not take effect until August 6, 2025."  NELA argues that the Legislature did not provide aggrieved employees with a "new cause of action" by enacting Chapter 212 -- "it merely expanded the remedies available" to those who file a complaint on or after Chapter 212's effective date.

                                    III.

A decision granting or denying a motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e) is reviewed de novo, affording no deference to the trial judge's legal conclusions.  Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019).  The test for a Rule 4:6-2(e) motion is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).  But when a complaint fails to state a "claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107.

Here, the parties do not dispute whether the facts suggest a cause of action.  Rather, they dispute whether Chapter 212 applies to all periods during which plaintiffs claim they were improperly denied wages.  Resolution of that

                                     9

dispute "is a purely legal question of statutory interpretation" that also requires de novo review.  Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016).

IV.

We begin with the threshold question of whether applying Chapter 212 to conduct occurring prior to its effective date is a true retroactive application of Chapter 212, or whether, as the Appellate Division concluded, the law in effect at the time the complaint was filed should control.  See Maia, 475 N.J. Super. at 54-56.

A.

Both federal law and state law determine whether a statute's application is retroactive by focusing on any changes to the legal consequences created by a statute or statutory amendment.  In Landgraf v. USI Film Products, 511 U.S. 244, 247 (1994), the United States Supreme Court decided whether the Civil Rights Act of 1991, which amended the Civil Rights Act of 1964, applied to a case pending on appeal when the 1991 Act was enacted.  In 1989, after experiencing approximately two years of sexual harassment by a co-worker, the plaintiff commenced an action in federal court alleging violations of Title VII of the Civil Rights Act of 1964.  Id. at 247-48.  On November 21, 1991, while the plaintiff's appeal was pending, President George H.W. Bush signed the 1991 Act into law.  Id. at 249.  The new Act created a right to recover

compensatory and punitive damages for certain violations of Title VII and allowed any party to demand a jury trial if such damages were sought. Id. at 249-50, 252.

The Supreme Court clarified that "[a] statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute's enactment." Id. at 269. Instead, the Court observed, the relevant inquiry is "whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 270 (emphasis added). The Court noted that the "application of new statutes passed after the events in suit is unquestionably proper in many situations," such as statutes that affect the "propriety of prospective relief"; "statutes conferring or ousting jurisdiction"; and "[c]hanges in procedural rules." Id. at 273-75. The Court distinguished such situations from statutes that "would operate retroactively" -- i.e., statutes that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. at 280.

Applying those principles to the case before it, the Supreme Court determined that application of the 1991 Act to conduct that occurred before it took effect would impact the legal consequences faced by the parties; notably, the "[r]etroactive imposition of punitive damages would raise a serious

11

constitutional question," and the "introduction of a right to compensatory damages" and "new damages" would create a "new legal burden" on the parties. Id. at 281-83. The Court therefore held that, because it had "found no clear evidence of congressional intent that [the relevant section of the 1991 Act] should apply to cases arising before its enactment," the new provisions could not be applied to the plaintiff's claims. Id. at 286.

This Court has likewise stressed that a "law is [retroactive] if it appl[ies] to events occurring before its enactment or if it changes the legal consequences of acts completed before its effective date." In re Registrant J.D-F., 248 N.J. 11, 22 (2021) (second alteration in original) (emphases added) (quoting Riley v. State Parole Bd., 219 N.J. 270, 285 (2014)).

B.

1.

Originally enacted in 1965, the WPL "governs the time and mode of payment of wages due to employees," and is a remedial statute to be construed liberally. Hargrove v. Sleepy's, LLC, 220 N.J. 289, 302-03 (2015).

Under the WPL, "[n]o employer may withhold or divert any portion of an employee's wages unless . . . [t]he employer is required . . . to do so by New Jersey or United States law . . . or [t]he amounts withheld or diverted" are

12

for contributions, payments, fees, or deductions authorized by the employee and approved by the employer.  N.J.S.A. 34:11-4.4.

Since its enactment, the WPL provided a private cause of action for violations under N.J.S.A. 34:11-4.7, which states in pertinent part that "each and every employee with whom any agreement in violation of this section shall be made by any such employer . . . shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction."  Prior to the enactment of Chapter 212, N.J.S.A. 34:11-4.7 allowed an aggrieved employee to bring a claim under the WPL limited solely to recovery of the full amount of wages improperly withheld by the employer. L. 1965, c. 173 § 7.

In addition to the cause of action for recovery under N.J.S.A. 34:11-4.7, prior to Chapter 212, the WPL contained some penalties for employers, including criminal and monetary penalties.  See N.J.S.A. 34:11-4.10 (1991). Chapter 212 divided N.J.S.A. 34:11-4.10 into three subsections.  See N.J.S.A. 34:11-4.10(a) to (c).  Substantively, those subsections impose more serious criminal sanctions, id. at -4.10(a), and provide remedies for employees in the form of liquidated damages and attorneys' fees, id. at -4.10(c).  Since August 6, 2019, beyond just the "full amount of wages" improperly withheld, N.J.S.A.

13

34:11-4.7, and criminal and monetary penalties, N.J.S.A. 34:11-4.10 (1991), the WPL has allowed an employee to

> recover in a civil action the full amount of any wages due, or any wages lost because of any retaliatory action taken in violation of [N.J.S.A. 34:11-4.10(a)] . . . plus an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable [attorneys'] fees[.]
>
> [N.J.S.A. 34:11-4.10(c) (emphases added).]

Chapter 212 also created a substantive defense to the liquidated damages provision if the employer can satisfy certain elements. Ibid.

### 2.

The WHL was enacted in 1966 to "protect employees from unfair wages and excessive hours." Hargrove, 220 N.J. at 304 (quoting In re Raymour & Flanigan Furniture, 405 N.J. Super. 367, 376 (App. Div. 2009)). The WHL governs the minimum wage "in order to safeguard [the] . . . general well-being" of employees and employers, N.J.S.A. 34:11-56a, and for certain employers, imposes an overtime rate for each hour of work in excess of the forty-hour work week, N.J.S.A. 34:11-56a4. Since the WHL was enacted, attorneys' fees have been recoverable under the statute. L. 1966, c. 113 § 26. Similar to the WPL, "[t]he remedial purpose of the [WHL] dictates that it should be given a liberal construction." Dep't of Labor v. Pepsi-Cola Co., 170 N.J. 59, 62 (2001).

14

Originally, N.J.S.A. 34:11-56a25.1 (1967) provided that no claim for damages under the WHL "shall be valid with respect to any such claim which has arisen <u>more than [two] years prior</u> to the commencement of an action for the recovery thereof." (emphasis added). This two-year "look-back" period operated as a statute of limitations for private rights of action.[2] Chapter 212 amended the two-year statute of limitations (and other parts of N.J.S.A. 34:11-56a25.1) to provide that:

> <u>No claim for unpaid minimum wages, unpaid overtime compensation</u>, unlawful discharge or other discriminatory acts taken in retaliation against the employee, or other damages under this act <u>shall be valid</u> with respect to any such claim <u>which has arisen more than six years prior to the commencement of an action for the recovery thereof</u>. In determining when an action is commenced, <u>the action shall be considered to be</u>

[2] Although the Appellate Division mentioned that this "look-back period . . . function[s] as a statute of repose," <u>Maia</u>, 475 N.J. Super. at 51, we note that this provision functions as a statute of limitations, <u>see Iliadis v. Wal-Mart Stores, Inc.</u>, 191 N.J. 88, 116 (2007) (classifying the WHL's previous two-year "look-back" provision as a statute of limitations). A statute of repose means that the "time within which suit may be brought . . . is entirely unrelated to the accrual of any cause of action." <u>Rosenberg v. Town of North Bergen</u>, 61 N.J. 190, 199 (1972). In contrast, a statute of limitations fixes a "time within which an injured person must institute an action seeking redress, and generally this time span is measured from the moment the cause of action accrues." <u>Ibid.</u> Although the WHL frames the time period by looking backward from the time of filing the complaint rather than looking forward from the accrual date of the cause of action, the amended six-year "look-back" provision in N.J.S.A. 34:11-56a25.1 is firmly tied to the date on which the cause of action arose and is therefore a statute of limitations, not a statute of repose.

15

commenced on the date when a complaint is filed . . .
in a court of appropriate jurisdiction.

[N.J.S.A. 34:11-56a25.1 (emphases added).]

In addition to extending the WHL's statute of limitations from two to six years,[3] Chapter 212 now allows a plaintiff to seek liquidated damages. N.J.S.A. 34:11-56a25 (providing that an "employee may recover in a civil action . . . an additional amount equal to not more than 200 percent of the amount of the unpaid minimum wages or wages lost due to retaliatory action as liquidated damages").

Relevant to the WPL and WHL, Section 14 of Chapter 212 explicitly states that "[t]his act shall take effect immediately, except that [S]ection 13 shall take effect on the first day of the third month following enactment." L. 2019, c. 212 § 14 (emphasis added). Section 13 is not relevant to this appeal.

---

[3] Chapter 212 does not include any language about the limitations period for claims brought under the WPL. In the face of that silence, the Appellate Division concluded from a statement in the legislative history of Chapter 212 that the six-year limitations period explicitly added to the WHL was intended to apply to the WPL despite the amendments' silence on that point. See Maia, 475 N.J. Super. at 53-54 (quoting the Sponsor's Statement to S. 1790, which indicates that "the bill . . . provides the same opportunity for workers aggrieved by violations of the wage payment law to bring a civil action as workers are provided for violations of the minimum wage law"). We disagree with that conclusion. See, e.g., State v. Ryan, 249 N.J. 581, 599 (2022) ("It is the Legislature's prerogative to impose a requirement in one context but not another; it is our duty to treat that distinction as meaningful."). The explicit establishment of a six-year limitations period for the WHL has no bearing on the limitations period for the WPL.

16

C.

A comparison of the relevant pre- and post-Chapter 212 provisions of the WPL and WHL is telling. By adding liquidated damages and a retaliation claim to both the WPL and WHL, attorneys' fees to the WPL, and by extending the statute of limitations in the WHL, Chapter 212 imposes new legal consequences to events that occurred prior to its enactment. Chapter 212 now allows plaintiffs to bring new claims with enhanced damages that were not previously available to plaintiffs at the time their injuries occurred, thereby changing the "legal consequences of acts." Riley, 219 N.J. at 285. The changes are not merely procedural; rather, they affect the duties and liabilities involved. Because Chapter 212 "attaches new legal consequences to events," applying the provisions of Chapter 212 to conduct "completed before its enactment" would therefore be retroactive application. See Landgraf, 511 U.S. at 269-70 (emphasis added).

Moreover, we respectfully view the Appellate Division's reliance on Hildreth to conclude otherwise to be misplaced. In Hildreth, we determined whether certain amendments to the Child Sexual Abuse Act (CSAA), Charitable Immunity Act (CIA), and Tort Claims Act (TCA), that went into effect on December 1, 2019, applied retroactively or prospectively to the plaintiff's allegations of sexual assault against an elementary school teacher.

17

252 N.J. at 510-11.  The amendments in Hildreth extended the statute of limitations for victims of child sexual abuse to file a claim under the CSAA and "removed the requirement that plaintiffs bringing CSAA complaints against public entities file a TCA notice of claim within ninety days of their claim accruing."  Id. at 511.  "The amendment [to the CSAA] was explicitly made retroactive, applying to child sexual abuse that 'occurred prior to, on or after'" the effective date.  Id. at 512 (quoting N.J.S.A. 2A:14-2a(a)(1)).

One month after the amendments went into effect, the plaintiff filed suit against the defendants, including the school district and elementary school, even though the plaintiff's claim accrued in 2016.  Id. at 510, 514.  The defendants "moved to dismiss the complaint for failure to file a notice of claim within ninety days of the claim's accrual in 2016" as was required by the TCA prior to the 2019 amendments.  Id. at 510-11, 515.

We affirmed the Appellate Division's decision to uphold the denial of the motion to dismiss and held that those "who file a CSAA complaint against a public entity after December 1, 2019 -- even if their cause of action accrued much earlier -- need not file a TCA notice of claim before filing suit."  Id. at 515, 519.  In our reasoning, we highlighted that the TCA amendment set forth changes to the TCA's procedural requirements and that by applying the TCA

amendment to the plaintiff's claim, we were not applying the statute retroactively.  Id. at 522.

Hildreth is distinguishable from this appeal because the amendments to procedural requirements at issue there did not create new damages, change the rights, responsibilities, claims, and defenses that parties can assert, or implicate new legal burdens, as is the case here with Chapter 212.  See Sutherland on Statutory Construction § 41:4 at 421 (7th ed. 2009) ("Whether a statute is 'substantive' or 'procedural' is relevant to determin[ing] if it should be applied retroactively."); see also Landgraf, 511 U.S. at 275 ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity.").

In sum, to apply the amendments contained in Chapter 212 at issue in this appeal to claims based on conduct prior to Chapter 212's August 6, 2019 effective date would be to apply Chapter 212 retroactively.  We therefore turn to the question of whether there is "clear evidence of [legislative] intent that [Chapter 212] should apply to cases arising before its enactment."  See Landgraf, 511 U.S. at 286.

V.

A.

New Jersey courts "have long followed a general rule of statutory construction that favors prospective application of statutes." Gibbons v. Gibbons, 86 N.J. 515, 521 (1981) (emphasis added); see also Kopczynski v. Camden County, 2 N.J. 419, 424 (1949) ("[W]ords in a statute ought not to have a [retroactive] operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied."). This is because it is "[a] fundamental principle of jurisprudence . . . that retroactive application of new laws is usually unfair." Sutherland on Statutory Construction § 41:2 at 386 (7th ed. 2009). That rule, however, "is not to be applied mechanistically." Johnson, 226 N.J. at 387 (quoting Gibbons, 86 N.J. at 522).

We apply a two-part test to determine if a statute should apply retroactively. We must first determine "whether the Legislature intended to give the statute retroactive application"; and second, "whether retroactive application of that statute will result in either an unconstitutional interference with vested rights or a manifest injustice." James v. N.J. Mfrs. Ins. Co., 216

20

N.J. 552, 563 (2014) (quoting In re D.C., 146 N.J. 31, 50 (1996)).[4] "Both questions must be satisfied for a statute to be applied retroactively." Johnson, 226 N.J. at 387.

As to the first question, there are three circumstances that justify applying a statute retroactively: (1) when the Legislature explicitly or implicitly expresses an intent that a law be retroactive; (2) when an amendment is ameliorative or curative; or (3) when the parties' expectations warrant retroactive application. Ibid.

First, regarding the Legislature's expression of intent, courts generally "enforce newly enacted substantive statutes prospectively, unless [the Legislature] clearly expresses a contrary intent." J.D-F., 248 N.J. at 22 (alteration in original) (emphasis added) (quoting Maeker v. Ross, 219 N.J. 565, 578 (2014)); NL Indus., Inc. v. State, 228 N.J. 280, 295 (2017) ("In the subset of legislative action modifying existing law, a new law is treated as presumptively prospective in application 'unless there is an unequivocal

---

[4] In James, the Court addressed the two-part test for whether retroactive application is appropriate. It determined that the first part of that test was unmet and therefore did not reach the second part of the test. See 216 N.J. at 563, 572-75. We similarly do not reach any aspect of the second part of the test for retroactive application here because, like in James, we hold that the first part of the test is unmet. Before applying the second part, we would need to address an open question about the manifest injustice standard left unresolved. See Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 572 (2008).

21

expression of contrary legislative intent.'" (quoting Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95 (1990))); see also State v. Bailey, 251 N.J. 101, 127 (2022) ("In the absence of evidence of legislative intent that the amendment to N.J.R.E. 509 would retroactively abrogate a privilege, we view that amendment to apply prospectively to marital communications that were made on or after the effective date."); State v. Lane, 251 N.J. 84, 87 (2022) (holding that N.J.S.A. 2C:44-1(b)(14) should be applied prospectively since there is no indication in the statutory language "that [it] applies to defendants sentenced prior to the provision's effective date").  The Legislature may convey its intent to apply a statute retroactively by expressing it explicitly "in the language of the statute or in the pertinent legislative history," or impliedly, by rendering it necessary "to make the statute workable or to give it the most sensible interpretation."  Gibbons, 86 N.J. at 522.

Second, when determining whether a statute or amendment is ameliorative or curative, courts look to whether the statute or amendment "is designed merely to carry out or explain the intent of the original statute." Johnson, 226 N.J. at 388 (quoting Nelson v. Bd. of Educ., 148 N.J. 358, 370 (1997)).  In other words, a statute or amendment is curative when "its purpose is 'to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act.'"  Ibid.

22

And third, the expectation of the parties:  if there is no "clear expression of legislative intent" concerning retroactivity, ibid. (quoting Gibbons, 86 N.J. at 523), then "a court will look at the controlling law at the relevant time and consider the parties' reasonable expectations as to the law," which may warrant retroactive application, id. at 389.  "An expectation of retroactive application 'should be strongly apparent to the parties in order to override the lack of any explicit or implicit expression of intent for retroactive application.'"  Ibid. (quoting James, 216 N.J. at 573).

B.

We hold that Chapter 212 is to be applied prospectively to conduct that occurred on or after August 6, 2019 -- Chapter 212's effective date -- not retroactively to conduct that occurred before the effective date.

There is nothing in the text or legislative history of Chapter 212 to explicitly or implicitly suggest retroactive application.  As we have stated on numerous occasions in J.D-F., 248 N.J. at 22, Riley, 219 N.J. at 285, NL Indus., 228 N.J. at 283, Bailey, 251 N.J. at 101, and Lane, 251 N.J. at 87-88, when the legislative intent does not explicitly or implicitly indicate retroactive application of statutes, we are hesitant to do so.  Here, moreover, the Legislature expressly stated in Section 14 of Chapter 212 that the new provisions "shall take effect immediately."  L. 2019, c. 212 § 14.  New Jersey

courts have repeatedly construed language stating that a provision is to be "effective immediately," or "effective immediately on a given date," to signal prospective application because it "bespeak[s] an intent contrary to, and not supportive of, retroactive application." Pisack v. B & C Towing, Inc., 240 N.J. 360, 371 (2020) (quoting Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 48 (2008)); Lane, 251 N.J. at 96.

Nor is Chapter 212 ameliorative or curative. It does not clarify existing law; rather, Chapter 212 adds substantive rights including new causes of action, defenses, and damages to the WPL and WHL, and extends the statute of limitations for WHL claims.

And the record does not suggest that the parties had any clear or reasonable expectation that Chapter 212 would apply retroactively. See Johnson, 226 N.J. at 388-89; Lane, 251 N.J. at 95.

In sum, neither legislative expression, the nature of the amendments, nor the parties' expectations, warrants a departure from the presumptive prospectivity that applies to substantive legislation. Accordingly, we need not reach the second part of the retroactivity test. See James, 216 N.J. at 563, 572-75.

Thus, for claims based on conduct that occurred prior to August 6, 2019 -- Chapter 212's effective date -- plaintiffs cannot rely on Chapter 212. Any

24

claims for new damages or remedies added by Chapter 212 can be brought only as to conduct that took place on or after August 6, 2019. That means that some of Maia's claims cannot be brought.[5] Because Howarth joined IEW in April 2020 and his claims arose solely from conduct that occurred after August 6, 2019, he may proceed with all of his claims.

## VI.

We therefore reverse the Appellate Division's interlocutory judgment, reinstate the order partially dismissing plaintiffs' complaint, and remand for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion.

---

[5] As to Maia's non-Chapter 212-based claims for recovery under the WPL for wages alleged to have been improperly withheld prior to August 6, 2019, the Appellate Division stated that "[n]either party has brought to our attention any precedent regarding the accrual date of a WPL claim" and that the court's "independent research reveals none." Maia, 475 N.J. Super. at 50. At oral argument, counsel for IEW, citing Meyers v. Heffernan, 740 F. Supp. 2d 637 (D. Del. 2010), suggested that the limitations period for WPL claims is six years pursuant to the general statute of limitations found in N.J.S.A. 2A:14-1. Our decision is limited to the viability of claims deriving from Chapter 212; we do not reach the limitations period under the WPL.